UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MARTHA ANDERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | No. EDCV 07-1505 AJW<br><br><br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), terminating her disability insurance benefits on the ground that her disability had ceased. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for disability insurance benefits on October 12, 2000, and subsequently she was found to be disabled beginning on August 15, 1999 and entitled to benefits due to an affective mood disorder that met section 12.04 of the Listing of Impairments. [Administrative Record ("AR") 12, 72-74, 296].

A continuing disability review was conducted, resulting in a determination that plaintiff's

///

1  disability had ceased due to medical improvement as of December 1, 2004, terminating her entitlement to
2  benefits. [AR 21, 28-35, 253, 296].[1]

3  A disability hearing officer affirmed that decision after a hearing. Plaintiff requested a hearing before
4  an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on October 4, 2005. The hearing
5  proceeded in plaintiff's absence after she called in to say she could not attend due to illness. During that
6  hearing, the ALJ elicited testimony from David Glassmire, Ph.D., a medical expert. [AR 261-268]. The
7  ALJ convened a second hearing on October 12, 2005. [AR 269-292]. Plaintiff appeared at that hearing
8  without a representative and testified in her own behalf. Testimony also was given by two lay witnesses.

9  In a written hearing decision dated January 11, 2006, the ALJ found that plaintiff's impairments had
10 shown significant medical improvement related to her ability to work, and that beginning on December 1,
11 2004, she no longer had a severe mental impairment. [AR 11-16]. The Appeals Council denied plaintiff's
12 request for review. [JS 2; AR 4-6]. Plaintiff filed a successful action for judicial review of that decision.
13 An order was filed on March 1, 2007, remanding the case for further administrative proceedings on the
14 grounds that the ALJ erroneously failed to obtain a knowing waiver of counsel and failed to discharge his
15 duty to develop the record fully and fairly to protect plaintiff's interests. [See AR 304-312]. The Appeals
16 Council subsequently remanded the case back to the same ALJ, who conducted a hearing on remand on
17 June 26, 2007. [AR 315, 371-394]. The ALJ issued a final written hearing decision on September 10,
18 2007 finding that plaintiff demonstrated medical improvement related to her ability to work as of December
19 1, 2004, and that she retained the residual functional capacity ("RFC") to perform work existing in
20 significant numbers in the national economy. [AR 300-302].[2]

**Standard of Review**

22 The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

---

[1] Plaintiff's procedural summary of the case is incomplete and misleading because she indicates that she is seeking review of an unfavorable decision denying her October 12, 2000 application for disability insurance benefits. She omits the fact that she initially received a favorable decision in which she was found entitled to benefits for a period of disability beginning on August 15, 1999, and that she filed this action to obtain judicial review of a decision terminating her benefits after a continuing disability review.

[2] The ALJ incorporated his January 2006 decision by reference into his September 2007 decision except where altered and supplemented by his September 2007 decision. [See AR 298].

- 2 -

1 evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.
2 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than
3 a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
4 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a
5 conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The
6 court is required to review the record as a whole and to consider evidence detracting from the decision as
7 well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir.
8 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to
9 more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must
10 be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,
11 599 (9th Cir.1999)).

**Discussion**

**Continuing disability**

14 The Social Security Act provides that a claimant must establish "inability to engage in any
15 substantial gainful activity by reason of any medically determinable physical or mental impairment which can
16 be expected to result in death or which has lasted or can be expected to last for a continuous period of not
17 less than 12 months." 42 U.S.C. § 423(d)(1)(A). Once a claimant is found disabled, a presumption of
18 continuing disability arises. See Bellamy v. Sec'y of Health & Human Svcs., 755 F.2d 1380, 1381 (9th
19 Cir. 1985); Mendoza v. Apfel, 88 F.Supp.2d 1108, 1113 (C.D. Cal. 2000). There is a statutory
20 requirement, however, that a claimant's continued entitlement to benefits be periodically reviewed. See
21 20 C.F.R. §§ 404.1594(a), 416.994(a). Subject to certain enumerated exceptions, a claimant's disability
22 cannot be found to have ceased unless substantial evidence demonstrates medical improvement in the
23 claimant's impairment(s) resulting in the ability to engage in substantial gainful activity. See 42 U.S.C. §
24 423(f); 20 C.F.R. §§ 404.1594(a), 416.994(a); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983);
25 see generally 20 C.F.R. §§ 404.1594, 416.994. Although the claimant retains the burden of proof, the
26 presumption of continuing disability shifts the burden of production to the Commissioner to produce
27 evidence to meet or rebut the presumption. See Bellamy, 755 F.2d at 1381.
28 The Commissioner's regulations establish a sequential evaluation procedure consisting of up to eight

1 steps for evaluating whether a claimant's disability continues. Under that procedure, the Commissioner
2 must determine:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

Delph v. Astrue, 538 F.3d 940, 945 -946 (8th Cir. 2008)(citing 20 C.F.R. § 404.1594(f)); see also 20 C.F.R. § 416.994(b)(5).

"Medical improvement" is defined as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) (see § 404.1528).

20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

To determine whether the claimant's signs, symptoms, and laboratory findings have shown medical improvement, the ALJ compares the claimant's condition at the comparison point date to his present condition. See 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii). Medical improvement is "related to ability to do work" if there has been a decrease in medical severity "of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work

- 4 -

activities. . . ." 20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(1)(iii). A determination that medical improvement related to the ability to do work has occurred does not necessarily mean that a claimant's disability has ended. It must also be shown that the claimant currently is able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(1)(iii). Impairments subject to "temporary remission" will not warrant a finding of medical improvement. 20 C.F.R. §§ 404.1594(c)(3)(iv), 416.994(b)(2)(iv)(D). Where, however, a claimant with a recurring illness has significant periods of remission, a finding of medical improvement promotes the Social Security Act's "complementary purpose of providing an incentive for individuals to return to work at the end of a period of disability." Flaten v. Sec'y of health & Human Svcs., 44 F.3d 1453, 1459 (9th Cir. 1995)(citing Cruise v. Harris, 510 F.Supp. 534, 535-537 (W.D. Mo. 1981)(affirming the ALJ's decision that a claimant who had "suffered periods of severe mental illness," but had periods of remission which lasted as long as a year or more when he was capable of working, was not disabled)).

To determine whether the medical improvement is related to the ability to work, the Commissioner ordinarily will compare the claimant's RFC at the time of the most recent favorable decision with a current RFC based on only those impairments which were present at the time eligibility was most recently approved. If the Commissioner finds that the claimant's condition has medically improved and the improvement is related to his ability to work, the Commissioner will consider the claimant's current impairments and determine whether these may, nonetheless, preclude substantial gainful activity. See 20 C.F.R. §§ 404.1594(b)(5)&(f); 416.994(b)(1)(iii),(b)(5). In essence, the sequential five-step analysis originally applied to determine disability is applied once again. See Delph, 538 F.3d at 946.

**The ALJ's findings**

To support his conclusion that plaintiff's disability ceased as of December 1, 2004, the ALJ made the following findings: (1) the most recent favorable medical decision finding that plaintiff was disabled, known as the comparison point decision ("CPD"), was dated January 31, 2001; (2) at the time of the CPD, plaintiff had medically determinable impairments consisting of an affective disorder and anxiety disorder that met the requirements of section 12.04 of the Listing; (3) plaintiff did not engage in any substantial gainful activity through December 1, 2004; (4) the medical evidence establishes that as of December 1, 2004, plaintiff had an anxiety disorder and a depressive disorder that were severe; (5) since

- 5 -

1 December 1, 2004, plaintiff has not had an impairment or combination of impairments that met or medically
2 equaled the severity of a listed impairment; (6) medical improvement occurred as of December 1, 2004;
3 (7) the medical improvement is related to plaintiff's ability to work because, as of December 1, 2004, the
4 impairments present at the time of the CPD no longer met or medically equaled a listed impairment; (8) as
5 of December 1, 2004, plaintiff continued to have a severe impairment combination or combination of
6 impairments; (9) based on the impairments present on December 1, 2004, plaintiff had the RFC to perform
7 simple, repetitive tasks requiring no hypervigilance; no more than occasional, non-intense contact with co-
8 workers and supervisors; no contact with the public; no driving of vehicles or equipment; and no-fast paced
9 work; provided, however, that she would miss work one or two times per month; (10) as of December
10 1, 2004, plaintiff was unable to perform her past relevant work; (11) on December 1, 2004, plaintiff was
11 40 years old and therefore is defined as a younger individual; (12) plaintiff has a limited education and is
12 able to communicate in English; (13) beginning on December 1, 2004 and using the Medical-Vocational
13 Guidelines as a framework for decisionmaking, plaintiff was "not disabled" regardless of whether or not
14 she had transferable job skills; (14) as of December 1, 2004, considering her age, education, work
15 experience, and RFC based on the impairments present on that date, plaintiff could perform a significant
16 number of jobs in the national economy, such as industrial cleaner, kitchen helper, or office helper; and (15)
17 plaintiff's disability ended as of December 1, 2004. [AR 298-202].

18 The ALJ followed the steps described in the regulations for evaluating continuing disability.
19 Ultimately, he concluded that plaintiff's disability ceased as of December 1, 2004. [See AR 298-302].
20 Although this case involves a continuing disability review, plaintiff fails to cite or even allude to the standard
21 for evaluating continuing disability and medical improvement, and nowhere does she contend that the ALJ
22 erred in finding that medical improvement occurred related to her ability to work.[3]

23 Medical improvement, of course, is a term of art. It refers to a decrease in the "*medical* severity"
24 of the impairments which previously were found disabling based solely on medical evidence consisting of

---

[3] Where, as here, the claimant was previously found disabled under the Listing and a finding of medical improvement is made on a continuing disability review, the medical improvement is deemed related to the ability to work because no prior RFC finding exists to compare with the claimant's current RFC. See 20 C.F.R. §§ 404.1594(c)(1)-(c)(3)(I), 416.994(b)(2)(iv)(A).

"symptoms, signs and/or laboratory findings associated with" those impairments. See 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(I); see Threet v. Barnhart, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003)(holding that it was error for the ALJ to find medical improvement based on his assessment of the claimant's testimony rather than on objective medical evidence). Rather than addressing the threshold issue of medical improvement, however, plaintiff argues that the ALJ erred in finding that she had the RFC to perform alternative work beginning on December 1, 2004, and that his findings are not supported by substantial evidence. Specifically, plaintiff contends that the ALJ improperly evaluated her subjective testimony and that of her husband, erroneously evaluated a treating source report providing a new psychiatric diagnosis of bipolar disorder, and posed a defective hypothetical question to the vocational expert. Those issues are relevant to determine whether the ALJ permissibly found that plaintiff retained the RFC to perform alternative work on and after December 1, 2004. That is, they are relevant to the continuing disability sequential evaluation at steps six through eight, after the ALJ found that plaintiff exhibited medical improvement related to her ability to work.

Plaintiff has not argued or shown that the ALJ erred in finding that medical improvement occurred related to plaintiff's ability to work. See Bergfeld v. Barnhart, 361 F.Supp.2d 1102, 1110 (D. Ariz. 2005)("A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision.")(citing Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.2001)); see Warre v. Comm'r of Social Sec. Admin., 439 F.3d 1001, 1007 (9th Cir. 2006)(declining to consider an issue that the plaintiff-appellant raised on appeal to the Ninth Circuit but had waived by failing to raise it before the district court). In any event, the ALJ applied the correct legal standard for assessing whether medical improvement had occurred. His finding that medical improvement had occurred is supported by substantial evidence consisting of the signs and findings cited in his decision. [See AR 299]. Because he permissibly found that medical improvement occurred, the ALJ did not err in finding that the medical improvement was related to plaintiff's ability to work. As directed by the regulations, the ALJ proceeded to determine whether plaintiff had a severe impairment or combination of impairments and how her impairments affected her ability to work. See 20 C.F.R. § 404.1594(f), 416.994(b)(5).

**Lay witness testimony**

Plaintiff contends that the ALJ did not adequately consider the testimony of plaintiff's husband,

- 7 -

1  Brian Anderson. [JS3-8].

2  During the June 2007 hearing on remand, Mr. Anderson testified that his wife's condition had
3  caused stress in their relationship. He said that "all I do is work. I get home, I work around the house. I
4  do . . . the grocery shopping and everything. . . . It's just . . . getting to be too much for me." [AR 379].
5  He said that plaintiff had mood swings "all the time," and that she had panic attacks "three or four times a
6  week," [AR 380]. He testified that she started things and left them undone at the end of the day. [AR 380].
7  Asked whether she avoided contact with other people, he said, "Pretty much, yeah." [AR 380].

8  While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ
9  may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart,
10 464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). Germane
11 reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the
12 medical evidence, inconsistencies between that testimony and the claimant's presentation to treating
13 physicians during the period at issue, and the claimant's failure to participate in prescribed treatment. See
14 Greger, 464 F.3d at 971; Bayliss, 427 F.3d at 1218; Lewis, 236 F.3d at 511.

15 The ALJ credited the testimony of plaintiff and her husband to the extent that he adopted the
16 relatively restricted functional capacity described by the medical expert, Dr. Glassmire, based on his review
17 of the medical evidence of record. [AR 300; see AR 380-389]. The ALJ concluded, however, that neither
18 plaintiff's testimony nor that of her husband warranted a more restrictive functional capacity.

19 The ALJ noted that there was no medical opinion in the record contradicting Dr. Glassmire's
20 testimony with respect to plaintiff's condition on and after December 1, 2004. [AR 232, 380-389]. The
21 ALJ pointed out that Dr. Glassmire stated that the only depressive symptoms mentioned in the record for
22 the relevant period were occasional reports of irritability, bad mood, and lack of motivation, without
23 medical evidence substantiating ongoing panic attacks. [AR 300]. The ALJ remarked that his RFC finding
24 also was fully consistent with the March 2005 consultative psychiatric examination report by Dr. Linda
25 Smith, who detected inconsistencies in plaintiff's presentation and "evidence of exaggeration and
26 contradiction in her history." [AR 232, 234]. Dr. Smith diagnosed an anxiety disorder NOS but added
27 that she did not see evidence of substantial anxiety or depression. [AR 234]. Dr. Smith opined that plaintiff
28 had no more than mild mental functional impairments. [See AR 234-235]. The ALJ remarked that plaintiff

- 8 -

1 had resumed mental health treatment in late 2005 after not seeing a psychiatrist for several years, but that
2 those treatment records did not establish an inability to work, and moreover that those records were not
3 relevant to the question before whether her disability had ceased effective December 1, 2004. [AR 300].

4 The ALJ considered Mr. Anderson's lay testimony and provided germane reasons for the weight
5 he gave that testimony. Plaintiff's contention that the ALJ ignored or erroneously rejected Mr. Anderson's
6 testimony lack merit.

**Plaintiff's subjective testimony**

8 Plaintiff contends that the ALJ erred in finding that plaintiff's subjective testimony did not warrant
9 any greater restrictions than those reflected in his RFC assessment. [JS 8-12].

10 Once a disability claimant produces evidence of an underlying physical or mental impairment that
11 is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider
12 all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th
13 Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§
14 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ
15 may then disregard the subjective testimony he considers not credible, he must provide specific, convincing
16 reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367
17 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective
18 testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings
19 "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's
20 testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367
21 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by
22 substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857
23 (9th Cir. 2001).

24 The ALJ noted that during the hearing on remand in June 2007, plaintiff "described her current
25 difficulties, but provided no credible information to contradict the evidence, which shows that she had
26 improved and was functioning fairly well as of December 1, 2004." [AR 300]. The ALJ did not summarize
27 plaintiff's June 2007 testimony in his September 2007 decision on remand, but that omission does not make
28 his credibility finding defective. Plaintiff's June 2007 testimony was similar to her October 2005 testimony,

which was summarized in the ALJ's prior decision [AR 11-16], and incorporated by reference in his decision on remand. [AR 298]. At the start of the June 2007 hearing on remand, the ALJ summarized plaintiff's October 2005 testimony on the record. He asked plaintiff to correct him if he made any mistakes, but she did not identify any. She noted a change in her household since that date in that her 20 year-old daughter had left home. [AR 373-380]. The ALJ then asked the medical expert and plaintiff's counsel if they had any questions. In response to questions posed by the medical expert, plaintiff testified that she was still taking Ativan for panic attacks and nitroglycerin for chest pain. She said she saw a psychiatrist, Dr. Barrozo, once a month for medication, and he also prescribed Abilify, a drug to treat mood disorders, including bipolar disorder. Plaintiff's counsel declined to examine her. [AR 378].

Nothing in plaintiff's testimony indicates that substantive changes to her October 2005 testimony were warranted. [See AR 372-378]. The ALJ did not err in failing to restate that testimony in his September 2007 decision.

As summarized by the ALJ, plaintiff's testimony during the October 2005 hearing was as follows. Plaintiff had no treating psychiatrist and saw her family doctor for treatment. She had panic attacks three or four times a week, and they felt like heart attacks. She had a panic attack any time she left the house. Plaintiff asked her doctor for a statement that she is disabled, but he would not give her one. She did not walk anywhere. She drove short distances but said she had to have someone with her. She took Ativan 1 milligram for her panic attacks and nitroglycerin for chest pain, but no antidepressant medication. Her doctor had prescribed it, but it made her sick. [AR 13; see AR 254, 274-284].

The ALJ discounted plaintiff's history of suffering disabling panic attacks several times a week after December 1, 2004 for reasons similar to those he gave for rejecting her husband's testimony. [See AR 14-15, 300]. He noted an absence of objective medical evidence to support the alleged severity of her symptoms, as reflected in the testimony of the medical expert, Dr. Glassmire. The ALJ also relied on Dr. Glassmire's testimony that plaintiff had only nondisabling mental functional limitations during the relevant period. [See AR 380-389].

The ALJ further noted that Dr. Smith, the consultative examiner, detected inconsistencies and exaggerations in plaintiff's presentation. For example, Dr. Smith pointed out that plaintiff appeared relaxed in a waiting room filled with people despite her subjective history of severe panic attacks and agoraphobia.

She noted that plaintiff appeared anxious to explain to Dr. Smith why she had not seen a psychiatrist since 2000 and that plaintiff said she "forgot" to go to her regular doctor to get Zoloft, which she had last taken about a year earlier. [AR 15, 229-235]. Dr. Smith remarked that plaintiff "appeared intent on giving a 'presentation' today." [AR 232].

The ALJ also relied on plaintiff's minimal mental heath treatment for allegedly disabling psychiatric impairments, noting that plaintiff had not seen a psychiatrist between 2001 and late 2005, when she contacted a county mental health clinic shortly before the date of her hearing. Plaintiff said that her family doctor, Dr. Bosakul, had been prescribing Ativan for "anxiety and depression," but that he refused to provide her with a statement that she was disabled, saying that he was not qualified to do so for Social Security.[4] [AR 274-275].The ALJ legitimately concluded that plaintiff's failure to seek consistent or aggressive mental health treatment indicated that her subjective symptoms were not fully credible.[AR 15]. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (holding that the ALJ permissibly considered discrepancies between the claimant's subjective allegations and the nature and extent of treatment obtained).

In addition, the ALJ permissibly relied on inconsistencies between the daily activities plaintiff reported to Dr. Smith (doing household chores in a family that included three children at home, cooking, self-care, occasionally going to the store, watching television, using the computer) with her statements to the disability hearing officer indicating that she had mostly "bad days" where she was essentially unable to function. [AR 229-235, 253-258].

For all of these reasons, the ALJ did not err in rejecting the alleged severity of plaintiff's subjective complaints, and his credibility finding is supported by substantial error. See Light v. Social Sec. Admin.,

---

[4] Treatment records from Dr. Bosakul indicate that he saw plaintiff three times in 2004. [AR 222-228]. In February 2004, plaintiff complained of depression, anxiety, a one-week history of chest pain, and "panic attack." A medication was prescribed but its name is illegible. [AR 225]. In July 2004, plaintiff saw Dr. Bosakul for complaints of anxiety, depression, a sore inside both nostrils for one month. The diagnosis was nasal infection, and the antibiotic cephalexin was prescribed. [AR 223]. On December 21, 2004, plaintiff presented with complaints of anxiety, depression, a sinus problem for the past 7 days, and left ear pain for the past 3 days. She was prescribed Nexium for GERD (gastroesophageal reflux disease) and Actifed for a sinus problem. Plaintiff also was diagnosed with a "cervical lump," and she was prescribed a third medication whose name is illegible. [AR 222].

119 F.3d 789, 792 (9th Cir. 1997)(listing factors an ALJ may consider in assessing credibility); Thomas, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence, [the court] may not engage in second-guessing.").

**Treating psychiatrist's opinion**

Plaintiff contends that the ALJ erred in "ignoring" an April 27, 2007 psychiatric evaluation by Donna Barrozo, M.D., of the San Bernardino County Department of Behavioral Health. [JS 12-15]. AR 346-347].

Plaintiff presented to Dr. Barrozo with complaints of marital stress and a "long" history of auditory hallucinations, anxiety attacks, depression, and "mood shifts." [AR 346]. On mental status examination, plaintiff's appearance, hygiene, behavior, thought process, thought content, memory, and orientation were within normal limits. Her speech slightly pressured. Her mood was slightly irritable and sad. [AR 347]. Insight and judgment were fair. Dr. Barrozo diagnosed bipolar disorder, NOS and rule out alcohol abuse. She gave plaintiff a "Current GAF" (Global Assessment of Function) score of 50, signifying serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. 1994)(revised 2002); see also Morgan, 169 F.3d at 598 n.1("Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient."); Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)(describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment").

In general, the opinions of treating doctors are entitled to greater weight than the opinions of non-treating doctors. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Tonapetyan, 242 F.3d at 1148. To reject the uncontroverted opinion of a treating physician, the ALJ must provide clear and convincing reasons supported by substantial evidence in the record. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Although he did not refer to Dr. Barrozo by name, the ALJ did not "ignore" her report. He wrote:

> Medical records submitted more recently show the claimant resumed mental health treatment in late 2005 and suggest her mental condition may have deteriorated somewhat in the past year or two. These records, however, do not show an ability to perform within the parameters established herein and, moreover, are not relevant to the only issue currently before me (i.e., whether cessation of the claimant's benefits as of December 1, 2004 was proper).

[AR 300 (citing AR 259-260, 344-369)]. During the hearing, the medical expert specifically discussed Dr. Barrozo's report (labeled Exhibit 10F). [AR 385-386]. He remarked that plaintiff's mental status examination findings were within normal limits except for irritable and anxious mood and fair insight and judgment. [AR 386]. He testified that the medication Abilify, which plaintiff had taken in 2006 and restarted with Dr. Barrozo, is an antipsychotic that can be used for mood stabilization and for bipolar disorder. [AR 386]. The medical expert noted that Dr. Barrozo did not diagnose an anxiety disorder. Plaintiff's family doctor, however, apparently continued to prescribe Ativan for "anxiety panic attack" even after plaintiff was seen by Dr. Barrozo.[5] [See AR 357].

Plaintiff argues that Dr. Barrozo's report established that plaintiff "does have a severe mental impairment, which causes significant limitation." [JS 13]. That argument is misguided. the ALJ found that plaintiff had an anxiety disorder and a depressive disorder that were severe, but not disabling, as of December 1, 2004. Dr. Barrozo was the first physician to diagnose plaintiff with bipolar disorder.

---

[5] Ativan, also known by the generic name lorazepam, is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms. Anxiety or tension associated with the stress of everyday life usually does not require treatment with an anxiolytic. [¶]The effectiveness of Ativan (lorazepam) in long-term use, that is, more than 4 months, has not been assessed by systematic clinical studies. The physician should periodically reassess the usefulness of the drug for the individual patient.

Ativan, Indications & Dosage, available at *http://www.rxlist.com/cgi/generic/loraz_ids.htm* (last visited September 22, 2008).

- 13 -

1  Neither her April 2007 report nor any other medical evidence in the record points to the existence of a
2  severe bipolar disorder on or before December 1, 2004, much less a disabling one.
3        The "Current GAF" score of 50 given by Dr. Barrozo does not compel a different conclusion. The
4  GAF scale "does not have a direct correlation to the severity requirements in [the Commissioner's] mental
5  disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury,
6  65 Fed. Reg. 50746, 50764-65 (August 21, 2000)(explaining that the Commissioner has not endorsed
7  the use of the GAF scale in the disability insurance and SSI programs). Even if plaintiff's score of 50 is
8  taken at face value as indicative of a serious occupational impairment, it applies to plaintiff's current level
9  of functioning in April 2007, not her condition in December 2004. Nothing in Dr. Barrozo's report
10 indicates that she was making a restrospective assessment of plaintiff's condition more than two years
11 earlier. Cf. Flaten, 44 F.3d at 1461 & n.4 (observing that a "long line of cases" has established that a
12 claimant must establish disability as of the date last insured, and that "any deterioration in her condition
13 subsequent to that time is, of course, irrelevant").
14       For all of these reasons, the ALJ did not err in assessing Dr. Barrozo's April 2007 report.
15 **Hypothetical question**
16       Plaintiff contends that the ALJ posed an incomplete hypothetical question to the vocational expert
17 because the hypothetical question did not include Dr. Barrozo's findings, including the GAF score of 50.
18       Hypothetical questions posed to the vocational expert must accurately describe all of the limitations
19 and restrictions of claimant that are supported by the record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th
20 Cir. 1999); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to
21 a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence.
22 Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).
23 ///
24 ///
25 ///
26
27
28

1   For the reasons described above, the ALJ did not commit legal error in concluding that Dr.
2   Barrozo's April 2007 report was not relevant to the issue of continuing disability on December 1, 2004.
3   Accordingly, the omission of Dr. Barrozo's findings from the ALJ's hypothetical questions was not error.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: October 6, 2008

_____
ANDREW J. WISTRICH
United States Magistrate Judge